Dear Mr. LeJeune:
I am in receipt of your request for an Attorney General's opinion concerning the maintenance of a school fund by all public elementary and secondary schools in the parish of Evangeline. You state the following facts:
 There is one ledger or account which is identified as the General Fund and this General Fund is comprised of funds derived from the sales from a pencil machine wherein students deposit money to purchase pencils and certain donations made by individuals to the school. For example, I have been informed that there has been approximately $2,500.00 donated by an individual and/or his business from Texas. This fund also included monies from fund-raising activities such as bar-b-ques.
You also state the following:
 Several years ago, a private non-profit organization known as Trees for the Village, Inc. was formed for the purpose of the beautification of the Village of Pine Prairie. This organization was able to obtain grants from various sources. One such grant allowed them to plant many trees on the main highway which runs through Pine Prairie.
 It came to this group's attention that there was a parking lot owned and used by Pine Prairie High School which was much in need of asphalt covering. The person who was obtaining the grants for Trees for the Village assured various community leaders that a grant could be obtained for the purpose of asphalting of this parking lot.
 Due to the fact that several individuals were so certain that a grant would be made available, these individuals went to a local bank and obtained a loan for approximately $22,000.00 for the purpose of immediately asphalting this parking lot during the summer months so it would not be disruptive to school activities once school started again. These individuals all endorsed the note.
 Unfortunately, the grant never came through and in the latter part of 1998, an installment on the note became due in the amount of $5,500.00.
 One of the endorser's of the note was the principal of Pine Prairie High School and another was a school board member from Pine Prairie.
The principal of Pine Prairie High School attended an executive committee meeting of the Evangeline Parish School Board and advised the school board of the above situation. Since the school board and Pine Prairie High School directly benefited from the asphalting of their parking lot as a result of this loan, the executive committee was asked to recommend to the full board that this note be paid from the general funds of the Evangeline Parish School Board. After some discussion, part of which concerned the legality of paying a note made by private citizens from public funds, the motion to pay this entire note was tabled. The principal then asked if it would be permissible for him to pay the installment which was due, $5,500.00, from his general fund. It is unclear as to whether or not this question was asked before the meeting adjourned or after the meeting adjourned but regardless, there was no formal motion made to allow the principal to pay this from his general fund. It appears that the principal was informally told by one or more board members on the executive committee that this would be proper and this $5,500.00 installment was paid out of the general fund. It is very clear that none of the funds used were public funds which the school received from the parish school board or the state.
Specifically, you ask the following question:
 The question is, once the funds from gate receipts, donations, pencil sales, fund raisers, etc. were placed in the general fund of the school account, did these funds become public funds, and if so, was it appropriate to pay a clearly private debt from the school activity fund?
LSA-R.S. 17:414.3 states the following concerning a school fund and the management, expenditure and accounting of such fund. This statute also sets forth the duties of the school principal concerning such fund. It provides the following:
 A. The principal of every public elementary and secondary school shall maintain a school fund as provided for in this Section for the management of any money which accrues to benefit his school. The money provided by the state or the city or parish school system for support of the regular instructional program or the school facility shall not be included in the school fund provided for in this Section; such money shall be managed as directed by the agency from which it is received.
 B. (1) The monies in the school fund shall be deposited in a single bank account, preferably interest-bearing, on which checks may be drawn. The bank shall be selected in the manner required by the policy or direction of the school board or, if there is no policy or direction, at the discretion of the principal.
 (2) Separate records or ledgers shall be maintained by the principal, or his designee from among the school staff, for each of the following sources of deposits into the school fund account:
 (a) Each club, organization, association, class, athletic team, or other organizational unit within the school, the existence of which complied with school and school board policy; the membership of which is either students, faculty, or employees of the school; and which generates money by collecting dues, conducting fundraisers, charging admission, or some other money generating activity for a purpose which the entity intends to control.
 (b) Each donation made to the school by an entity outside the school, whether it be a parents club, community, business, or civic organization, or other donor, when such donation is made for a specific or restricted use or purpose.
 (c) All donations made by any entity referred to in Subparagraphs (a) and (b) of this Paragraph as well as all monies raised by the school population generally which are unrestricted and which are intended for discretionary use to benefit the school, its students, faculty, employees, programs, or facilities.
 (d) All monies raised in a school-wide effort for a specific use or purpose.
 (e) Any other money source, temporary or permanent, which is identifiable, approved by the principal, and has a need to maintain a record or ledger.
 (3)(a) No money shall be drawn on the school fund account without a request therefor; no withdrawal shall occur unless the check carries the signature of the principal, or the administrator who assumes his duties during his absence.
 (b) No monies shall be drawn on the school fund account unless the request for withdrawal of funds carries two signatures, one of which shall always be the principal's.
 (c) The other signature shall be:
 (I) In the case of a request for withdrawal by an entity which has deposited pursuant to the status described in R.S. 17:414.3(B)(2)(a) and (e), an officer, member, or sponsor of the entity, designated by the entity.
 (ii) In the case of a request for withdrawal for the pursuit of a restricted use or purpose as described in R.S. 17:414.3(B)(2)(b), another school administrator, faculty member, or employee who is approved by the donor and is familiar with the purpose of the donation.
 (iii) In the case of a request for withdrawal of money deposited pursuant to R.S. 17:414.3(B)(2)(c) or (d), any other school administrator, faculty member, or employee.
 (d) Withdrawals may be made for estimated amounts of anticipated need, but in such cases shall be accounted for with receipts, which accounting shall be reflected in the school fund records and which receipts shall be retained with the record until the report provided for in R.S. 17:414.3(C) is approved by the superintendent.
 (e)(I) Money deposited in the school fund pursuant to R.S. 17:414.3(B)(2)(a), (b), (d), and (e) shall be used according to the purpose for which it was generated or for the purposes selected by the depositing entities, provided such expenditures are approved by the principal as indicated by his signature on checks for withdrawals.
 (ii) Money deposited in the school fund pursuant to R.S. 17:414.3(B)(2)(c) may be expended at the discretion of the principal provided such expenditures are for the benefit of all or any of the school's students, faculty, staff, facility, or program and provided the ledger reflects the expenditure.
 (4) Deposits in the school fund account shall be made by the principal, or his designee from among the school staff.
 (5) Every deposit or withdrawal from the school fund account shall be entered in the separately maintained record as provided in Paragraph (2) of this Subsection.
 (6) The records of the school fund shall be reconciled monthly with the school fund account statement of the bank regarding activity in the school fund account. Bank statements shall be signed by the principal, once reconciled with the records, and retained with the school fund record. The school fund records shall be reviewed annually by the principal and one other member of his administrative staff. Such review shall be reflected in the record by the signature of both reviewers.
 (7)(a) Any amount of money in the school fund account in excess of that needed to permit the access described in this Section may be invested by the principal in accordance with R.S. 33:2955. However, balances in the school fund account shall include all monies deposited pursuant to R.S. 17:414.3(2)(a), (b), and (e) unless the depositing entity approves the investment of any portion of its deposits as provided in this Paragraph, which approval shall be in writing and maintained with the school fund record.
 (b) Any investments made pursuant to this Paragraph shall be recorded in the records of the school fund, shall be reported as required in Subsection C of this Section, and shall be accounted for in any review or reconciliation of the school fund.
 (c) Earnings on any investment made pursuant to this Paragraph shall be considered the same as, and may be expended as, provided in R.S. 17:413.2(B)(3)(e)(ii).
 C. Each school principal shall report on his school's fund annually to the superintendent or a member of his staff designated by him, at a regular time designated by the superintendent. The report shall be sufficiently detailed to notify the superintendent of account balances, significant deposits, significant expenditures, and any unresolved errors or discrepancies. The superintendent shall approve such reports in writing to the school within two months of receiving the report or shall notify the principal of any further information needed or examination required. The superintendent shall be responsible for notifying the school board of the apparent need for further examination, supervision, or intervention. The school board may require and provide for an audit of the school fund of any school within its jurisdiction at any time.
 D. No agency of state government, or any of its branches, shall supervise, regulate, or audit the school funds provided for in this Section, except upon request of a city or parish school board.
 E. Nothing in this Section shall be construed to permit an expenditure that is otherwise prohibited by law.
First, it must be pointed out that Section A of the statute specifically states that "[t]he money provided by the state or the city or parish school system for the support of the regular instructional program or the school facility shall not be included in the school fund provided for in this Section; such money shall be managed as directed by the agency from which it is received." As you have indicated in your request and as can be seen in the ledger report of the school fund, it has been the policy of the school to deposit local and state money in the general fund. This is a violation of state law.
As indicated in Attorney General Opinion No. 92-79, "[t]he purpose of LSA-R.S. 17:414.3 is to provide for management of funds, other than those provided by the state or the city or parish school system, which accrue to the benefit of a certain school."
In the first part of your question, you inquire whether the deposit of the funds from gate receipts, donations, pencil sales, fund raisers, etc., in the general fund of the school account transforms these funds to public funds. In Attorney General Opinion No. 93-338, our office opined that monies comprising the school funds established by LSA-R.S. 17:413.3 constitutes public funds, subject to the collateralization requirements of LSA-R.S.39:1225. Specifically, our office opined the following concerning the nature of the school fund.
 As previously noted the monies comprising this school fund emanate from organizational units within the school and donations from other organizations (e.g., civic, business, parents) outside the school. Once received by the school, the funds are deposited in a single account, with separate ledgers being maintained for each of the five possible sources of funding. Withdrawals, investments, and use of the funds must conform to the statutory requirements set forth in Section 414.3. While the principal and/or his appropriate designee have some discretion over the purposes for which the unrestricted funds may be spent, this discretion is not unfettered.
 Attorney General Opinion No. 90-609; correctly opined:
 The statute limits the principals's discretion to expenditures which benefit the educational purposes of the school, and La. Const. Art. VII, Section 14 (1974) prohibits any gratuitous expenditures of school funds for non-educational purposes, which are either legally unauthorized or non-mandated.
 Considering the above factors, we must conclude that the monies comprising the school fund are clearly public in nature. Conversely, the funds generated by organizations outside the school are private in nature. While the private funds are not subject to the state's collateralization requirements, the school funds clearly are. Accordingly, to the extent the monies in the school fund are not insured by a governmental agency, they must be fully collateralized.
In the second part of your question you ask whether it is appropriate to pay a clearly private debt from the school activity fund if these funds become public funds once deposited. LSA-R.S.17:414.3 has many safeguards built in the statute in order to prevent an abuse of these funds. Among these safeguards, Section 3(a) requires a request for withdrawal of these funds prior to the withdrawal. The request must carry two signatures, one of which shall always be the principal's. Section 3(c) specifies the other signatures that are required in certain situations.
According to our conversation and from your opinion request the principal did not obtain a request for withdrawal of the $5500.00 paid out of the general fund. Additionally, Section 3 (e)(ii) states the following concerning the expenditure of money deposited in the school fund:
 Money deposited in the school fund pursuant to R.S. 17:414.3(B)(c) may be expended at the discretion of the principal provided such expenditures are for the benefit of all or any of the school's students, faculty, staff, facility, or program and provided the ledger reflects the expenditure.
Due to the failure to comply with all of the provisions of this statute, as well as the conflict of interest that the principal personally had in this matter, it appears that the expenditure of funds in the general fund for the Evangeline Parish Schools was inappropriate to pay the private debt incurred by several individuals including the principal even though the purpose of the debt was for improving the parking lot owned by the school.
In conclusion, once the funds from gate receipts, donations, pencil sales, fund raisers, etc., were placed in the general fund of the school account, these funds became public funds, and it was inappropriate to pay a clearly private debt from the school activity fund.
I hope this opinion has sufficiently addressed your concerns. If I can be of further assistance please let me know.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY:_____________________________ BETH CONRAD LANGSTON ASSISTANT ATTORNEY GENERAL
RPI/BCL/sc
a:\00-101.op
OPINION NUMBER 93-338
JUNE 1, 1993
47-B — FISCAL AGENTS — selection, contracts, private agreement, etc. (depository) 94 — SCHOOLS AND SCHOOL DISTRICTS — administration, government, and officers 96 — SCHOOLS AND SCHOOL DISTRICTS — fiscal management, department, securities and taxation 100 — SCHOOLS AND SCHOOL DISTRICTS — teachers, principals and superintendent, sabbatical leave, extra curricular activities students
Art. VII, Section 14 (1974) Const.
R.S. 17:414.3
R.S. 39:1221 and 1225
Monies comprising the school funds established by R.S. 17:414.3
constitutes public funds, subject to the collateralization requirements of R.S. 39:1225.
Mr. Milton Coulon Financial Accountant New Orleans Public Schools 4100 Touro Street New Orleans, LA 70122
Dear Mr. Coulon:
You have requested an opinion of the Attorney General regarding the scope and effect of Louisiana law as it relates to the collateralization of deposits made by individual schools, related clubs, and associations. You state that your school district is currently developing a site-based purchasing program, whereby budgeted funds are transferred to the schools to make purchases. Current board policy requires each school to maintain one operating checking account for system-provided and activity funds. You further question whether student activity and/or booster club funds constitute public funds which require collateralization.
Act No. 1066 of the 1990 Regular Session of the Louisiana Legislature, effective July 27, 1990, enacted LSA-R.S. 17:414.3. It provides, in pertinent part, the following:
 "A. The principal of every public elementary and secondary school shall maintain a school fund as provided for in this Section for the management of any money which accrues to benefit his school. The money provided by the state or the city or parish school system for support of the regular instructional program or the school facility shall not be included in the school fund provided for in this Section; such money shall be managed as directed by the agency from which it is received.
 B. (1) The monies in the school fund shall be deposited in a single bank account preferably interest-bearing, on which checks may be drawn. The bank shall be selected in the manner required by the policy or direction of the school board or, if there is no policy or direction, at the discretion of the principal.
 (2) Separate records or ledgers shall be maintained by the principal, or his designee from among the school staff, for each of the following sources of deposits into the school fund account:
 (a) Each club, organization, association, class, athletic team, or other organizational unit within the school, the existence of which complies with school and school board policy; the membership of which is either students, faculty, or employees of the school; and which generates money by collecting dues, conducting fund raisers, charging admission, or some other money generating activity for a purpose which the entity intends to control.
 (b) Each donation made to the school by an entity outside the school, whether it be a parents club, community, business, or civic organization, or other donor, when such donation is made for a specific or restricted use or purpose.
 (c) All donations made by an entity referred to in Subparagraphs (a) and (b) of this Paragraph as well as all monies raised by the school population generally which are unrestricted and which are intended for discretionary use to benefit the school, its students, faculty, employees, programs, or facilities.
 (d) All monies raised in a school-wide effort for a specific use or purpose.
 (e) Any other money source, temporary or permanent, which is identifiable, approved by the principal, and has a need to maintain a record or ledger.
 * * *
 (e)(i) Money deposited in the school fund pursuant to R.S. 17:414.3(B)(2)(a), (b), (d), and (e) shall be used according to the purpose for which it was generated or for the purposes selected by the depositing entities, provided such expenditures are approved by the principal as indicated by his signature on checks for withdrawals.
 (ii) Money deposited in the school fund pursuant to R.S. 17:414.3(B)(2)(c) may be expended at the discretion of the principal provided such expenditures are for the benefit of all or any of the school's students, faculty, staff, facility, or program and provided the ledger reflects the expenditure.
 * * *
 E. Nothing in this Section shall be construed to permit an expenditure that is otherwise prohibited by law." (Emphasis added.)
As can be seen from the above, the management and expenditure of individual school funds is now statutorily controlled. It should be noted that money provided by the state, the city, or parish school system should not be included in the school fund. To the extent your current board policy requires each school to maintain one operating checking account for system-provided and activity funds, it should be amended to conform to the legislative mandate that school activity and donated funds be maintained in a separate account. I am enclosing a copy of LSA-R.S. 17:414.3 for your reference and convenience. I am also enclosing copies of Attorney General Opinion Nos. 90-468, 90-609, and 92-79, all of which discuss the ramifications of Section 414.3.
The issue of collateralization is controlled by LSA-R.S.39:1211, et seq. Section 1221 enumerates the types of security which are acceptable for purposes of the collateralization of public funds. Section 1225 provides that the amount of the security shall, at all times, be equal to one hundred percent (100%) of the amount on deposit to the credit of the depositing authority, except that portion of the deposits insured by a governmental agency (e.g., the Federal Deposit Insurance Corporation).
While the collateralization requirements are located in the body of laws regarding fiscal agency, we believe they are also applicable to school funds which are deposited pursuant to LSA-R.S. 17:414.3(B)(1), even though the financial institution may not be a designated fiscal agent. The public policy of legal provisions requiring collateralization is that public funds be protected and secured from loss by one hundred percent (100%) collateralization by the fiscal institution involved. The status of the bank as a fiscal agent is not of the essence to the duty to collateralize, but rather the depositing of the public funds into the custody of that bank. Thus, the duty to collateralize is triggered when public funds are deposited. We focus now upon the nature of the funds in question.
As previously noted, the monies comprising this school fund emanate from organizational units within the school and donations from other organizations (e.g., civic, business, parents) outside the school. Once received by the school, the funds are deposited in a single account, with separate ledgers being maintained for each of the five possible sources of funding. Withdrawals, investments, and use of the funds must conform to the statutory requirements set forth in Section 414.3. While the principal and/or his appropriate designee have some discretion over the purposes for which the unrestricted funds may be spent, this discretion is not unfettered.
Attorney General Opinion No. 90-609 correctly opined:
 "The statute limits the principal's discretion to expenditures which benefit the educational purposes of the school, and La. Const. Art. VII, Section 14 (1974) prohibits any gratuitous expenditures of school funds for non-educational purposes, which are either legally unauthorized or non-mandated."
Considering the above factors, we must conclude that the monies comprising the school fund are clearly public in nature. Conversely, the funds generated by organizations outside the school are private in nature. While the private funds are not subject to the state's collateralization requirements, the school funds clearly are. Accordingly, to the extent the monies in the school fund are not insured by a governmental agency, they must be fully collateralized.
It is our understanding from a telephone conversation with representatives of the FDIC that the individual school fund accounts are separately insured. However, we recommend that you request a formal written opinion from the FDIC regarding this issue.
Should you have any additional questions concerning this matter, please do not hesitate to contact us.
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: ROBERT E. HARROUN, III Assistant Attorney General
RPI/ROB3/bb Enclosures 0090R
OPINION NUMBER 92-79
FEBRUARY 12, 1993
100 — SCHOOL SCHOOL DISTRICTS — Teachers, Principals 
Superintendents, Sabbatical Leave, extracurricular activities, Students
R.S. 17:414.3 R.S. 17:414.3(B)(3)(a) R.S. 17:414.3(B)(2) R.S. 17:414.3(B)(3(e)(i) R.S. 17:414.3(B)(2)(a)(b)(d) and (e)
1) Funds generated from a fund-raising campaign by parent/booster clubs using any of the school's facilities, students, faculty members or the school's name, come under the custody and control of a local school board according to LSA-R.S. 17:414.3 if the school has the benefit of funds generated from any of the above sources.
2) The signature of the principal is required if money is to be withdrawn from the school fund account.
3) The term "check" as used in the statute is not a "request for withdrawal", there is a requirement of a request for withdrawal where funds are to be withdrawn from the school fund account which is separate from the requirement of the principal's signature on a check for withdrawal.
4) Any petty cash system that is implemented must function is accordance with LSA-R.S. 17:414.3(B)(2) and with the relevant policies that govern any other petty cash system that might operate within a school.
Mr. Joe Armetta Director of Finance Beauregard Parish School Board 202 West Third Street Post Office Drawer 938 DeRidder, Louisiana 70634
Dear Mr. Armetta:
As I appreciate your request, you would like an opinion on the following questions:
 (1) Do funds generated from a fund-raising campaign by parent/booster clubs using any of the school's facilities, students, faculty members or the school's name, come under the custody and control of a local school board according to LSA-R.S. 17:414.3?
 (2) Does the signature on the check by a principal satisfy the requirement of 17:414.3(B)(3)(a)?
 (3) Is there a difference in the meaning of "request for withdrawal" and "check" as used in the statute?
 (4) How does the use of a petty cash system apply to this legislative act?
LSA-R.S. 17:414.3 pertains to the duties of school principals in regard to the management of any money which accrues to the benefit of his school. In pertinent part it reads as follows:
 A. The principal of every public elementary and secondary school shall maintain a school fund as provided for in this Section for the management of any money which accrues to benefit his school. The money provided by the state or the city or parish school system for support of the regular instructional program or the school facility shall not be included in the school fund provided for in this Section; such money shall be managed as directed by the agency from which it is received.
 (B)(2) Separate records or ledgers shall be maintained by the principal, or his designee from among the school staff, for each of the following sources of deposits into the school fund account:
 (a) Each club, organization, association, class athletic team, or other organizational unit within the school, the existence of which complies with school and school board policy; the membership of which is either students, faculty, or employees of the school; and which generates money by collecting dues, conducting fund-raisers, charging admission, or some other money generating activity for a purpose which the entity intends to control.
 (b) Each donation made to the school by an entity outside the school, whether it be a parents club, community, business, or civic organization, or other donor, when such donation is made for a specific or restricted use or purpose.
 (c) All donations made by any entity referred to in Subparagraphs (a) and (b) of this Paragraph as well as all monies raised by the school population generally which are unrestricted and which are intended for discretionary use to benefit the school, its students, faculty, employees, programs, or facilities.
 (d) All monies raised in a school-wide effort for a specific use or purpose.
 (e) Any other money source, temporary or permanent, which is identifiable, approved by the principal, and has a need to maintain a record or ledger.
 (3)(a) No money shall be drawn on the school fund account without a request therefor; no withdrawal shall occur unless the check carries the signature of the principal, or the administrator who assumes his duties during his absence.
 (b) No monies shall be drawn on the school fund account unless the request for withdrawal of funds carries two signatures, one of which shall always be the principal's.
 (c) The other signature shall be:
 (i) In the case of a request for withdrawal by an entity which has deposited pursuant to the status described in LSA-R.S. 17:414.3(B)(2)(a) and (e), an officer, member, or sponsor of the entity, designated by the entity.
 (ii) In the case of a request for withdrawal for the pursuit of a restricted use or purpose as described in LSA-R.S. 17:414.3(B)(2)(b), another school administrator, faculty member, or employee who is approved by the donor and is familiar with the purpose of the donation.
 (iii) In the case of a request for withdrawal of money deposited pursuant to LSA-R.S. 17:414.3(B)(2)(c) or (d), any other school administrator, faculty member or employee.
 (e)(i) Money deposited in the school fund pursuant to LSA-R.S. 17:414.3(B)(2)(a), (b), (d), and (e) shall be used according to the purpose for which it was generated or for the purposes selected by the depositing entities, provided such expenditures are approved by the principal as indicated by his signature on checks for withdrawals. (Emphasis added).
According, to the opinion of the Attorney General in Opinion Number 90-468, funds of independent parent groups and athletic booster clubs not sponsored or supervised by the school are not subject to school custody and control under Act No. 1066 of the 1990 Regular Legislative Session (enacting LSA-R.S. 17:414.3), and the school board's implied powers to regulate such activities are legislatively preempted.
However, LSA-R.S. 17:414.3 does not distinguish between funds that are generated through use of the school's facilities, students, faculty members, or the school's name, and those which are not. LSA-R.S. 17:414.3(B)(2) has "preempted the implied powers of school boards to place these independent funds under their control by enacting resolutions establishing a local policy requiring the deposit of such funds in the school fund under the control of the school principal." (Op. Atty. Gen. No. 90-468, September 20, 1990). Absent any statutory qualification of funds generated by use of a school's name or facilities, these monies should be managed in accordance with LSA-R.S.17:414.3. To interpret the provision otherwise would allow very few fund-raising activities to escape the supervision of the local school board.
The purpose of LSA-R.S. 17:414.3 is to provide for management of funds, other than those provided by the state or the city or parish school system, which accrue to the benefit of a certain school. In the management of these funds the statute distinguishes between those which are generated by organizations "within the school" for purposes which that organization intends to control and those which are generated by outside entities and are donated to the school for a specific or restricted use or purpose.
Whether the organization utilizes school facilities, students, faculty members, or the school's name should not be the determining factor. If the school has the benefit of funds generated from any of the above sources, the funds come under the custody and control of the school and must be accounted for by the principal in accordance with LSA-R.S. 17:414.3.
As to your second question, LSA-R.S. 17:414.3(B)(3)(a) provides that, "No money shall be drawn on the school fund account without a request therefor; no withdrawal shall occur unless the check carries the signature of the principal, or the administrator who assumes his duties during his absence." (Emphasis added). Thus, it is the opinion of this office that the signature of the principal on the check for withdrawal of funds from the school fund account is the requirement of LSA-R.S. 17:414.3 (B)(3)(a).
As to your third question, the term, "check," as used in the statute is not the same as a "request for withdrawal." Again, LSA-R.S. 17:414.3(B)(3)(a) provides that there must be a request in order for funds to be withdrawn from this account. This is a requirement separate and distinct from that of the principal's signature on each check for withdrawal. Further, the statute states that the request for withdrawal of funds must have two signatures, one being the principal's and one being from an enumerated list at LSA-R.S. 17:414.3(B)(3)(c)(i) through (iii).
Lastly, regarding your fourth question, any petty cash system that is implemented must function in accordance with this statutory provision, and with the relevant policies that govern any other petty cash system that might operate within your school.
I hope this opinion sufficiently addresses your concerns. Please contact me if we can be of further assistance.
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: BETH A. CONRAD Assistant Attorney General
RPI/BAC:pab 0194p
OPINION NUMBER 90-609
December 4, 2000
94 — SCHOOLS SCHOOL DISTRICTS — Administration, Government Officers
La. Const. Art. VII, § 14 (1974) LSA-R.S. 17:414.3
Principal's discretion in use of general school fund is limited by statute and the Constitution.
Mr. H. Bland O'Connor, Jr. Postlethwaite Netterville Certified Public Accountants 8550 United Plaza Blvd., Suite 1001 Baton Rouge, LA 70809
Dear Mr. O'Connor:
You have requested an opinion of the Attorney General, on behalf of the Ascension Parish School Board, regarding the proper uses for unrestricted school funds by school principals in light of 1990 La. Acts No. 1066.
1990 La. Acts No. 1066 (R.S. 17:414.3) authorized discretionary use of school funds for the educational benefit of the school community. The principal has discretion to use such funds for educational purposes which enhance the mission of the school to educate young persons.
You have requested an opinion as to whether the principal's discretion is limited. Discretion by definition is always limited by the scope of the principles upon which it is based. The principal has discretion to give effect not to what the principal thinks is authorized, but what the law directs. (Discenere per legem quid sit justum) Unlimited discretion does not exist in law.
The statute limits the principal's discretion to expenditures which benefit the educational purposes of the school, and La. Const. Art. VII, § 14 (1974) prohibits any gratuitous expenditures of school funds for non-educational purposes which are either legally unauthorized or non-mandated.
Turning to the specific examples of your opinion request, buying academic letter jackets for individual students is not required by the law and is, therefore, a donation. However, R.S. 17:414.3B(3)(e)(i) authorizes the principal to accept donations from parent clubs, civic organizations, etc. for specified purposes and to use such funds for the restricted purpose. Such expenditure of donated. restricted funds for academic letter jackets would not violate Art. VII, § 14, because the statute legally obligates the principal to spend the money for the dedicated use. Hence the statute and constitutional restriction greatly limit the principal's discretion to use school funds for this purpose; his authority is limited to the use of donated, dedicated funds specified by statute, but not the general school fund.
The use of school funds to buy coffee for the teacher's lounge and for public consumption in the school office is a prohibited donation and unconstitutional.
The last example is the buying of coffee, soft drinks and snacks for consumption during a school open house. The interaction between faculty, staff, parents, and students is integral to the educational function of the school. Education is a process which includes not only the school-house but the home for its success. The holding of open houses for parents is such a time-honored tradition as to have become an educational custom, as well as expressly required by many school boards. In our opinion, the provision of refreshments of modest nature and cost to parents, staff and students at open houses is legitimately related to the educational process and of benefit to the school community, is obliged by educational custom, and, therefore, authorized by law. School funds may be expended for such purpose.
Trusting this to be of sufficient information, I am,
Sincerely,
 WILLIAM J. GUSTE, JR. Attorney General
 By: __________________________ CHARLES J. YEAGER Assistant Attorney General
CJY:jv